GUARDSMARK, INC., Plaintiff,

v.

PINKERTON'S, INC., Defendant.

No. 90 Civ. 2442 (MGC).

United States District Court,
S.D. New York,

June 6, 1990.

Donovan Leisure Newton & Irvine, New York City, by Kenneth N. Hart, David S. Versfelt, Rogovin, Huge & Schiller, Washington, D.C. by William A. Isaacson, Alan Howard, Jonathon D. Schiller, for plaintiff.

Paul, Hastings, Janofsky & Walker, New York City, by David Sellinger, John L. Sander, John P. Carey, Ronald P. Mysliwiec, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff, Guardsmark, Inc., and defendant, Pinkerton's, Inc., are in the business of providing security services. Both companies believe that psychological testing of security guards is important to the provision of effective security services, and both agree that in recent years users of security services have become increasingly interested in the psychological testing of the security officers assigned to them. Guardsmark tests all of its security guards with The Minnesota Multiphasic Personality Inventory ("the MMPI").

In September of 1989, Pinkerton's distributed an illustrated ten page promotional brochure. On page three of the brochure, the following sentence appears: "First, we test *every* officer applicant with a special version of the MMPI psychological evaluation." Guardsmark contends that Pinkerton's inclusion of this sentence in its promotional material constitutes false advertising and unfair competition. Guardsmark has sued Pinkerton's for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for violation of Sections 349 and 350 of the New York General Business Law, N.Y. Gen.Bus.Law § 349 (McKinney 1984) and N.Y. Gen.Bus.Law § 350 (McKinney 1963), and for the common law tort of unfair competition.

With the consent of the parties, after expedited discovery, a consolidated preliminary and permanent injunction hearing was held. The evidence was presented at a two day bench trial. After weighing all of the evidence and evaluating the credibility of the witnesses, I find that Guardsmark has not proven by a fair preponderance of the credible evidence that Pinkerton's has violated the law.

## THE FACTS

The MMPI is one of the best known and widely used personality assessment tests. It was developed in the late 1930's and early 1940's by researchers at the University of Minnesota. The strength of the MMPI is attributable, in large measure, to the extensive research done during its development and during the years of its use.

The full MMPI consists of 566 questions. Originally, the questions were written on index cards which could be shuffled and given to a test subject in any order. Now, the MMPI is available in two test booklet versions, the Form R and the Full Form. Recently, the MMPI–2 was introduced. This new test is similar to the MMPI except that the order of some of the questions has been changed, some questions have been eliminated, and the language of some of the questions has been adjusted to better reflect current speech patterns. The MMPI–2 was designed so that all the research done on the MMPI would be applicable to it. In other words, it was intended to be the equivalent of and a substitute for the MMPI.

The MMPI is designed to be scored on fourteen different scales. Ten of these scales measure psychopathology. The other four scales are validity scales which measure the defensiveness and honesty of the test subject. After the answers are scored on the fourteen scales, the results are plotted on a graph. The MMPI profile on the graph is then interpreted by a qualified psychologist experienced in interpreting MMPI profiles. The test comes with instructional materials which explain how the fourteen scales should be scored. In fact, only 399 of the questions are used to produce the fourteen scales; the other questions are experimental and are designed to test for other things, like lower back pain. The Form R test booklet is designed so that all of the questions used for the fourteen scales are grouped at the beginning. Thus, the subject can stop after completing the first 399 questions and not spend time answering the experimental questions if the person administering the test has no need for the experimental scores.

Since the MMPI's introduction, independent researchers have been working to develop a shorter version of the MMPI. To date, at least fourteen such abbreviated versions have been developed and written about. These shorter tests are called "short form MMPI's," "altered form MMPI's," or "abbreviated MMPI's." There is an extensive body of literature discussing these short form MMPI's. Dr. W. Grant Dahlstrom, plaintiff's expert witness, included chapters on MMPI short forms in several of his books on the MMPI.

One of the most widely known of the short form MMPI's is the MMPI 168. This test uses only the first 168 questions of the MMPI to generate the fourteen scales. The tables needed to convert the answers from the MMPI 168 into the scales are included in MMPI handbooks and codebooks published by the University of Minnesota Press. The MMPI 168–E is an-

other short form MMPI. It consists of the first 168 questions of the full MMPI plus all the K-scale questions. The K-scale is one of the four validity scales. It is used to measure subtle defensiveness.

Guardsmark administers the full MMPI to all its employees immediately after they are hired. The test is given at each employee's local office. The completed answer sheet is mailed to headquarters where it is fed into a computer which scores the scales and generates an MMPI profile. This profile is then read by a trained psychologist. The psychologist distills his conclusions into one or more codes. The codes are sent back to the local office, where they are interpreted by the use of a key produced by the psychologist. The local office uses the results of the MMPI to determine placement and appropriate disciplinary response in the event of improper conduct by the employee. Although Guardsmark submitted no advertising or promotional material in which it discussed its use of the MMPI, there was testimony that Guardsmark salespeople stress the use of the MMPI as a major selling point with potential customers.

Pinkerton's also does psychological testing. It tests all applicants for employment with a series of questions based on the MMPI 168–E.[1] However, Pinkerton's test booklet differs from the MMPI 168–E test booklet in that Pinkerton's has altered the wording of several of the questions, has changed the order of some of the questions, and has eliminated several questions which it found to be politically, religiously, or sexually offensive. The questions eliminated by Pinkerton's have also been eliminated or altered in the MMPI–2.

Pinkerton's test, created by Dr. Arthur LeBlanc, a psychologist employed by Pinkerton's, is designed to be administered and assessed at the local offices. After the answer sheet is completed, the clerk administering the test uses overlays designed by Dr. LeBlanc to score the test on five clinical scales and one validity scale. By apply-

ing these cutoff scores, the local office decides whether to hire the applicant. The overlays were developed by Dr. LeBlanc and include a built-in K-scale, which he generated based on averages from security guard testing. A full profile is never produced and a psychologist does not separately evaluate each set of results.

### THE LAW

Section 43(a) of the Lanham Act provides,

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125.

■ In order to succeed on a claim under § 43(a) of the Lanham Act, Guardsmark must establish either (1) that Pinkerton's description of the psychological test it administers to all applicants is false on its face, or (2) that, while literally true or ambiguous, the description is implicitly deceptive in context and has a tendency to mislead or deceive as demonstrated by evidence of consumer reaction. *See Avis Rent A Car System, Inc. v. Hertz Corp.,* 782 F.2d 381, 386 (2d Cir.1986). In evaluating liability under the second standard, it is immaterial whether the court finds itself misled by the statement. Rather, the plaintiff must produce evidence about what the persons to whom the promotional statement is addressed found to be the message. *Id.,* at 386; *American Home Product Corp. v. Johnson & Johnson,* 577 F.2d 160, 173 (2d Cir.1978). Here, Guardsmark concedes that it has no evidence of actual customer confusion or deception stemming

---

**1.** In addition, Pinkerton's tests all supervisory employees and armed guards with the full MMPI read individually by a psychologist.

from the statement. Therefore, it can only prevail if the statement sued on is literally false.

■ Guardsmark contends that Pinkerton's promotional statement is literally false in that the test administered by Pinkerton's to all applicants is not, in fact, a special version of the MMPI psychological evaluation. In support of its position, Guardsmark points to the following: (1) the test involves only 179 of the 566 MMPI questions; (2) the order and wording of some of the MMPI questions has been changed; (3) the test is scored on only six scales, an MMPI profile is not developed, and the results are not individually read by a trained psychologist; and (4) the phrase "version of the MMPI" suggests that Pinkerton's test is approved by the University of Minnesota. The evidence does not support Guardsmark's position.

It is undisputed that the MMPI 168 and the MMPI 168–E, as well as several other variations of the MMPI, are generally referred to as short form or abbreviated versions of the MMPI. Therefore, it cannot be literally false to describe Pinkerton's test as a version of the MMPI merely because it uses fewer than all of the questions. Thus, plaintiff's first argument is unpersuasive.

The MMPI was originally composed of questions on index cards which were shuffled and administered in a random order. It is still available in this form. In addition, each party's expert witness testified that research indicates that the order in which the questions are given does not affect the results obtained. Therefore, the fact that Pinkerton's test booklet contains the questions in a slightly different order does not make Pinkerton's test not a version of the MMPI. Similarly, the slight language changes in a few of the questions, and the removal of a few offensive questions, both of which have also been done by the University of Minnesota in the MMPI–2, are not significant enough alterations to make Pinkerton's test not a version of the MMPI. Moreover, a study conducted by Dr. LeBlanc after this suit was filed demonstrated that the slight changes in wording and question order in Pinkerton's test did not affect the results. Dr. LeBlanc's study was based on methodology designed by Dr. Kenneth Vincent, the defendant's expert, and the results were reviewed by Dr. Vincent.

Dr. Vincent testified very credibly that while a full MMPI profile based on all fourteen scales was necessary for a full clinical evaluation of a patient, when the MMPI is used in other contexts, such as employment screening, only certain scales are necessary. He further testified that a test that uses fewer than the fourteen scales is accurately referred to as a version of the MMPI. Although interpreting the MMPI generally requires a trained psychologist, Pinkerton's method does not really eliminate this step. The grids used to evaluate the applicant's answers were developed by Dr. LeBlanc, a trained psychologist, based on his expertise in psychology and his knowledge of the MMPI and how it should be scored and evaluated. Because the views of a trained psychologist are used in evaluating each test, albeit in a standardized fashion, I do not find that Pinkerton's method of evaluating the tests makes its statement that its test is a version of the MMPI literally false.

Moreover, Pinkerton's qualifies the phrase "version of the MMPI" with the word "special." Webster's Third New International Dictionary contains the following definitions for the word "special:"

> 1: distinguished by some unusual quality ... 3 a: ...: having an individual character or trait: PECULIAR, UNIQUE ... 4 ... b: assigned or provided to meet a particular need not covered under established procedures ... 5: ...: designed or selected for a particular purpose, occasion, or other end: limited in range....

*Webster's Third New International Dictionary of the English Language, Unabridged* 2186 (Merriam–Webster, 1961). Thus, even if the insignificant changes in the test questions and the somewhat unorthodox method of scoring and evaluating Pinkerton's test raise questions as to whether Pinkerton's test is a version of the MMPI, Guardsmark has not proven that it

is literally false to call it a "special version of the MMPI psychological evaluation."

Finally, nothing in the language used in the promotional statement indicates to the reader that the test given by Pinkerton's is expressly approved by the University of Minnesota.

After carefully considering all the evidence, I find that plaintiff has not shown that Pinkerton's statement "First, we test *every* officer applicant with a special version of the MMPI" taken in context is literally false. Therefore, Guardsmark's Lanham Act claim fails.

■ In light of this conclusion, Guardsmark's claims under New York law must also fail. Both parties agree that the legal test for liability under §§ 349 and 350 of the New York General Business Law is the same as that under § 43(a) of the Lanham Act. *See Procter & Gamble Co. v. Cheseb-rough Pond's Inc.*, 588 F.Supp. 1082, 1083 n. 4 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir.1984); *Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188, 1192–93 (S.D.N.Y.1983). Thus, since plaintiff has not established liability under § 43(a), it has also failed to do so under the New York General Business Law. Although the New York tort of unfair competition covers a wide variety of illegal practices and is broad and flexible enough to encompass any form of commercial immorality, *Roy Export Company Establishment of Va-duz, Liechtenstein v. Columbia Broad-casting System, Inc.*, 672 F.2d 1095, 1105 (2d Cir.1982), Guardsmark has not established such improper conduct by Pinkerton's here.

For the reasons discussed above, plaintiff is not entitled to an injunction and, therefore, the complaint is dismissed.

The foregoing shall constitute my findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

SO ORDERED.