AMERICAN EXPRESS TRAVEL
RELATED SERVICES COM-
PANY, INC., Plaintiff,

v.

MASTERCARD INTERNATIONAL
INCORPORATED and Lintas:
N.Y., Defendants.

No. 91 Civ. 6603 (CBM).

United States District Court,
S.D. New York.

Oct. 23, 1991.

Christy & Viener by Wayne C. Matus, Janis G. White and General Counsel's Office of American Exp. by John B. Hobby, New York City, for plaintiff American Exp. Travel Related Services Co., Inc.

Hall, Dickler, Lawler, Kent & Friedman by Barry R. Fischer, Peter D. Raymond, Jeffrey M. Tamarin, New York City, for defendant Mastercard Intern., Inc.

Satterlee Stephens Burke & Burke by Robert M. Callagy, Jan Uhrbach, New York City, for defendant Lintas: N.Y.

## OPINION RE PRELIMINARY INJUNCTION

MOTLEY, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Introduction

This case came before the court on a motion from plaintiff, American Express Travel Related Services Company, Inc., to enjoin its competitor, defendant Master-Card International, Inc., and MasterCard's advertising agency, defendant Lintas: N.Y., from broadcasting a television commercial called "Directions." "Directions" is a humorous advertisement depicting a man ("Man # 1") trying to find a location where he can get cash with his American Express Card. After asking seven people for directions, and receiving a variety of responses, he is left at the end of the commercial cashless and frustrated. Meanwhile, the MasterCard holders depicted are able to access cash as an announcer states "with MasterCard, you can get cash just about anywhere. At nearly 200,000 bank branches and 60,000 ATMs."

Plaintiff filed a complaint against defendants on October 1, 1991 claiming that "Directions" violated the Lanham Act, 15 U.S.C. § 1125(a), and various state laws, and requesting preliminary and permanent injunctive relief. Plaintiff alleged that the advertisement was false in four respects. First, plaintiff alleged that "Directions" indicates that it is impossible to get cash with the American Express Card. Plaintiff pointed to the sequence where, in response to the query "Cash?" by Man # 1 holding up the American Express Card, Woman # 3 says "You know, the thing is, not with that card. That's the problem."

Second, plaintiff alleged that the announcer's statement "Looking for cash without Mastercard can lead you nowhere," coupled with the accompanying visual depiction of Man # 1 driving across a trestled bridge over river heavily lined with trees, falsely indicates that it is virtually impossible to get cash with the American Express Card.

Third, plaintiff alleged that the commercial falsely states that an American Express Card holder must travel to remote locations to get cash with her card. Besides the depiction of the bridge, plaintiff cited one set of directions given to Man # 1 which informed him to "go through [a] corset store" where "in back, there's a dirt road."

Fourth, plaintiff alleged that the advertisement falsely states that it is difficult to get cash with the American Express Card, either because the locations are hard to find or because it is hard to find directions to the locations.

At a conference on October 2, 1991 attended by all parties, plaintiff's motion for a temporary restraining order was granted and a preliminary hearing was scheduled for October 9, 1991 to decide whether a preliminary injunction should issue. The hearing was held on October 9–11, 15, 1991.

At the outset of the hearing, defendants informed the court that they had no intention of broadcasting "Directions" in the future. Instead, defendants had created a new commercial called "Directions 2"

which they sought permission to broadcast. "Directions 2" mirrors "Directions" except for two modifications. One difference is Woman # 3's response to the query "Cash?" by Man # 1 holding up the American Express Card. Instead of saying "You know, the thing is, not with that card. That's the problem," she now responds "You know, the thing is, with that card I don't know where. That's the problem." The other alteration was made to the announcer's statement as Man # 1's car crosses the bridge. Instead of "Looking for cash without MasterCard can lead you nowhere," the announcer now says "Looking for cash without MasterCard isn't exactly easy."

Although plaintiff admitted that the modifications addressed its first two allegations, plaintiffs claimed that "Directions 2" was still false in two ways: (1) that the new commercial falsely states that an American Express Card holder must travel to remote locations to get cash with her card, and (2) that it falsely states that is difficult to get cash with the American Express Card. Therefore, plaintiff continued to seek an injunction with respect to the new commercial.

On October 10, 1991, the court ruled orally that the temporary restraining order applied to both "Directions" and "Directions 2" while the outcome of the hearing was pending. (Tr. 253).

II. Findings of Fact

After hearing the evidence and weighing the testimony and exhibits received in evidence, as well as the credibility of the witnesses, the court makes the following findings of fact:

1. There is no reason to expect that the first commercial, "Directions," will ever be broadcast again. Counsel for defendant MasterCard represented that "Directions" will never again "see the light of day." (Tr. 3). At the hearing, defendants were prepared to stipulate that "Directions" will not be broadcast in the future. (Tr. 3). Plaintiff presented no evidence that "Directions" was broadcast after the temporary restraining order was issued on October 2, 1991,[1] nor did plaintiff express any reason to believe that "Directions" would be broadcast in the future.

2. The new commercial, "Directions 2," is not explicitly false in any way. The advertisement compares the relative ability of American Express Card and MasterCard holders to find locations where they can get cash with their card.

3. "Directions 2" does not discuss the steps that holders of either the American Express Card or MasterCard must follow in order to access cash in some way. Therefore, it is assumed that the American Express Card holder in the new commercial has already established the facility to access cash in some manner using his card. Any difference in the procedure an American Express Card holder or MasterCard holder must follow in order to establish the ability to get cash with their card is of no import to this case.

4. Nor does "Directions 2" discuss the difference in the cash being accessed. Whether the cash being accessed by holders of the American Express Card or MasterCard is in fact a loan or is instead the cardholder's own cash being drawn from her checking account is of no import to this case.

5. MasterCard provides more locations domestically and more locations abroad at which its cardholders can get cash with their card than does American Express. (Tr. 331). The following chart provides approximate numbers.

---

**1.** Plaintiff's counsel did represent to the court that either "Directions" or "Directions 2" was broadcast in Dallas, Texas on October 14, 1991. (Tr. 366). However, counsel for the defendants represented that any such broadcast was inad- vertent and that the defendants had done, and were continuing to do, everything within their power to ensure that neither enjoined commercial was broadcast. (Tr. 366).

Domestically

|  | ATMs | Bank Branches/Travel Service Offices | Total |
|---|---|---|---|
| MasterCard | 46,400 | 65,000 | 111,400 |
| American Express | 26,000 | 572 | 26,572 |

Abroad

|  | ATMs | Bank Branches/Travel Service Offices | Total |
|---|---|---|---|
| MasterCard | 13,600 | 135,000 | 148,600 |
| American Express | 17,000 | 1,128 | 18,128 |

Worldwide

|  | ATMs | Bank Branches/Travel Service Offices | Total |
|---|---|---|---|
| MasterCard | 60,000 | 200,000 | 260,000 |
| American Express | 43,000 | 1,700 | 44,700 |

(Tr. 13, 20, 83, 85, 196–197, 238–39; Riese Aff. ¶ 7; Kendrick Aff. ¶ 6–7).

---

6. Defendants' representation in "Directions 2" that MasterCard holders can get cash with their card at about 200,000 bank branches and 60,000 automatic teller machines ("ATMs") worldwide is truthful.

7. "Directions 2" does not explicitly say, either in its audio or video components, that it is "difficult" for an American Express Card holder to find a location where he can get cash with his card. The new commercial points up the comparative difficulty American Express Card holders have vis-a-vis holders of MasterCard in finding locations where they can use their card to get cash. The difference is truthful since MasterCard offers more locations. The execution, "Directions 2," is literally truthful in its depiction of strangers attempting to give directions to the American Express Card holder looking for a location where he can get cash with his card. There is nothing the strangers literally do or say that can be called false or misleading. Since it may in fact be harder for an American Express Card holder to get such directions given the difference in the number of locations offered, the explicit message that it is "more difficult" for an American Express Card holder than for a MasterCard holder to find a location where she can get cash with her card is truthful.

8. "Directions 2" does not explicitly say, either in its audio or video components, that the locations offered by American Express to its cardholders to get cash with their card are "remotely situated." In the new commercial, the strangers try to help the American Express Card holder find a location where he can get cash with his card. Although he is pointed in several directions, must drive his car, and is told by Woman # 4 that he should "go through a corset store" where "in back, there's a dirt road," none of the depictions are literally false or misleading. Again, since fewer locations means that they may be harder to locate, the explicit message is truthful.

9. The exaggeration used by defendants to convey the message that it is more difficult for an American Express Card holder to find a location where he can get cash with his card is mere "puffing."

10. The consumer reaction survey used by plaintiff to attempt to prove that "Directions" conveys a false and misleading message to consumers has no bearing on the new commercial, "Directions 2." The survey does not prove that the new commercial implicitly misleads consumers nor does it raise serious questions going to the merits to make them a fair ground for litigation.

### III. Conclusions of Law

1. A suit for injunctive relief is moot when the offending conduct ceases and the court finds " 'that there is no reasonable expectation that it will resume.' "

*Upjohn Co. v. American Home Products Corp.*, 598 F.Supp. 550, 554–55 (S.D.N.Y.1984) (quoting *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 523 (S.D.N.Y.1980) (citing *Allee v. Medrano*, 416 U.S. 802, 810–11, 94 S.Ct. 2191, 2197–2198, 40 L.Ed.2d 566 (1974); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968))).

■ 2. When a defendant revises an allegedly infringing commercial and represents that the original commercial will not be broadcast in the future, the need for injunctive relief as to the original commercial is moot. *Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1052 and n. 11 (2d Cir.1983), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *see Tambrands, Inc. v. Warner–Lambert Co.*, 673 F.Supp. 1190, 1198 (S.D.N.Y.1987); *cf. Upjohn*, 598 F.Supp. at 554–55; *McNeilab*, 501 F.Supp. at 523.

3. A party is entitled to preliminary injunctive relief if it can show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 78 (2d Cir.1990) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979)), *cert. denied*, —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991); *MGM–Pathe Communications Co. v. The Pink Panther Patrol*, 774 F.Supp. 869, 872 (S.D.N.Y.1991).

4. The merits of this case are governed by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), which states:

Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—

.        .        .        .        .        .

(2) in commercial advertising or promotion, misrepresents the nature, character, [or] qualities ... of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

■ 5. An advertisement can be false, and thus violative of the Lanham Act, in two ways: (1) it can be explicitly false or (2) it can be ambiguous on its face, but implicitly misleading to consumers as evidenced by the consuming public's reaction to it. *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991); *Proctor & Gamble Co. v. Chesebrough–Pond's Inc.*, 747 F.2d 114, 119 (2d Cir.1984); *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165–66 (2d Cir.1978).

■ 6. In a case such as this, where an advertisement makes a comparison between competing products, irreparable injury will be presumed if the advertisement is found to be false and misleading, either explicitly or implicitly. *McNeil–P.C.C.*, 938 F.2d at 1549; *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988); *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316–17 (2d Cir.1982); *Tambrands*, 673 F.Supp. at 1195; *Upjohn*, 598 F.Supp. at 555.

■ 7. Likelihood of success of on the merits is found if the court finds a commercial explicitly false or plaintiff proves through a consumer reaction survey that it is implicitly false. *Coca–Cola*, 690 F.2d at 317–18; *Upjohn*, 598 F.Supp. at 555–56; *see Avis Rent A Car System, Inc. v. The Hertz Corp.*, 782 F.2d 381, 386 (2d Cir. 1986).

8. " 'A claim in general terms of superiority of one's product over that of a competitor is mere "puffing" and is not actionable.' " *AutoInfo, Inc. v. Hollander Publishing Co.*, 1991 WL 64190, *4, 1991 U.S.Dist Lexis 5290, *11 (S.D.N.Y. April 18, 1991) (quoting *Brignoli v. Balch Hardy*

*and Scheinman, Inc.,* 645 F.Supp. 1201, 1209 (S.D.N.Y.1986)).

■ 9. In order to succeed, a claim of disparagement must contain "specific assertions of unfavorable facts reflecting on the rival product." *Brignoli,* 645 F.Supp. at 1209 (S.D.N.Y.1986) (quoting Prosser, *Torts* at 949 (3d ed.)).

■ 10. If plaintiff fails to introduce a consumer reaction survey, plaintiff cannot prevail on the theory of implicit falsity. *Avis,* 782 F.2d at 386 (2d Cir.1986); *Tambrands,* 673 F.Supp. at 1198 (S.D.N.Y.1987); *see Guardsmark, Inc. v. Pinkerton's Inc.,* 739 F.Supp. 173, 175–76 (S.D.N.Y.), *aff'd,* 923 F.2d 845 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2893, 115 L.Ed.2d 1058 (1991).

*IV. Conclusion*

1. As per Fed.R.Civ.P. 65(a)(2), the trial of this action will be advanced and consolidated with the hearing of the application for a preliminary injunction. The trial will commence at 10:00 a.m. on November 25, 1991 in courtroom 2703 of the U.S. Courthouse at Foley Square in New York, N.Y.

■ 2. Until such time as plaintiff can show fear of future harm from the first commercial, "Directions," there is *no need* for any injunctive relief with regard to "Directions." Therefore, as to "Directions," the temporary restraining order is lifted and the application for a preliminary injunction is denied. Unless at the time of trial plaintiff illustrates a likelihood of future harm with respect to "Directions," that commercial will not be permanently enjoined.

3. The trial should, therefore, focus on the new commercial, "Directions 2."

4. Since "Directions 2" is not explicitly false, an issue at trial will be whether it is implicitly false. The parties can conduct consumer reaction surveys between this date and trial and present such evidence at trial.

■ 5. Until such evidence is presented, this court has no basis for enjoining broadcasts of "Directions 2." The court has found that the new commercial is not ex-

plicitly false. Without evidence regarding implicit falsity, the court cannot find that plaintiff has been irreparably harmed or is likely to succeed on the merits. Therefore, as to "Directions 2," the temporary restraining order is lifted and the application for a preliminary injunction is denied.

SO ORDERED.